UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.:

| | |
|---|---|
| David Moody,<br><br>                    Plaintiff,<br>v.<br><br>Credit Acceptance Corporation, Equifax Information Services, LLC, and Trans Union LLC,<br><br>                    Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

This action arises out of Defendants Credit Acceptance Corporation ("Defendant CAC"), Equifax Information Services LLC's ("Defendant Equifax"), and Trans Union LLC ("Defendant Trans Union")(collectively "Defendants") violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter the "FCRA") and Defendant CAC's violations of the Discharge Injunction of the Bankruptcy Code, 11 U.S.C. § 524.

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 11 U.S.C. § 524 and pursuant to 15 U.S.C. § 1681.

2. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Plaintiff seeks actual damages, punitive damages, costs, and attorneys' fees.

3. Venue is proper in this District because the acts and transactions occurred in this District, Plaintiff resides in this District, and Defendants transact business in this District.

**PARTIES**

4. Plaintiff David Moody (hereinafter "Plaintiff") is a natural person who resides in the County of Hennepin, State of Minnesota and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant Credit Acceptance Corporation (hereinafter "Defendant CAC") is a national auto finance company; is licensed to do business in the State of Minnesota and regularly conducts business in said State; has a principal place of business located at 25505 W Twelve Mile Rd, Southfield, MI 48034; and has a registered agent for service in Minnesota of Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113; is a "person" as defined in 15 U.S.C. § 1681a(b); and is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

6. Defendant Equifax is a foreign limited liability company organized under the laws of the state of Georgia; is authorized to do business in the state of Minnesota and regularly conducts business within said State; and has a principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Defendant Equifax is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f) regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined by 15 U.S.C. § 1681a(d), to third parties.

7. Defendant Trans Union is a foreign corporation and has a principal place of business located at 555 West Adams Street, Chicago, IL 60661. Defendant Trans Union is licensed to do business in the state of Minnesota, regularly conducts business within said State, and has a registered agent for service of The Prentice-Hall Corporation System, Inc., 2345 Rice Street, Suite 230, Roseville, MN 55117. Defendant Trans Union regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports. Defendant Trans Union, therefore, is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

8. Consumer credit plays a major role in the lives of American consumers entering the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

9. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

10. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

11. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

12. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

13. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

14. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

15. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's creditworthiness. Still, it can also prevent consumers from full

4

access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

16. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

17. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

18. Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to

the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

19. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry-wide as the CDIA's "Credit Reporting Resource Guide."

20. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

21. Metro II codes are used on an industry-wide form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

22. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and credit reporting agencies.

23. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

## FACTUAL ALLEGATIONS

24. On or about November 3, 2022, Plaintiff incurred a financial obligation with Defendant CAC. Specifically, the debt was an auto loan for a Chevrolet Traverse.

25. On November 9, 2021, Plaintiff commenced a bankruptcy case in the District of Minnesota under Chapter 13 of the Bankruptcy Code, Case Number 21-41988.

26. On December 7, 2022, Plaintiff's Bankruptcy was converted to a Chapter 7 Bankruptcy.

27. On December 7, 2022, Defendant CAC was sent an e-mail notice of Plaintiff's Bankruptcy conversion by the Bankruptcy Noticing Center.

28. On March 7, 2023, the Plaintiff received a discharge in the Bankruptcy case.

29. On March 7, 2023, Defendant CAC was sent an e-mail notice of Plaintiff's Bankruptcy Discharge by the Bankruptcy Noticing Center.

30. On or about May 11, 2023, Plaintiff obtained a copy of his credit report and discovered that Equifax and TransUnion were both inaccurately reporting his account with Defendant CAC as showing a balance of $16,166, in violation of 15 U.S.C. § 1681s-2(b) and 11 U.S.C. § 524.

31. Defendant CAC failed to update its reporting of their respective account to the credit reporting agencies.

32. The reporting of a debt to a credit reporting agency is "a powerful tool designed, in part, to wrench compliance with payment terms...." *Rivera v. Bank One*, 145 F.R.D. 614, 1993 WL 30681 (D.PR. 1993); accord *Sullivan v. Equifax, Inc.*, 2002 US Dist. LEXIS 7884 (E.D. Pa 2002); and *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

33. On or about May 12, 2023, Plaintiff sent a dispute letter to the national credit reporting agencies, Defendants Equifax and Trans Union stating that the underlying Defendant CAC account / debt had been discharged in bankruptcy on March 7, 2023, and requesting that the inaccurate reporting of Defendant CAC's account be deleted or updated to the correct status pursuant to 15 U.S.C. §1681i.

34. In response to this dispute, Defendants Equifax and Trans Union were required to conduct reinvestigations into the specific Defendant CAC debt pursuant to 15 U.S.C. § 1681i.

35. Plaintiff's May 12, 2023, dispute letters to Defendants Equifax and Trans Union included a copy of Plaintiff's Bankruptcy Discharge Injunction and copies of the inaccurate tradeline from Plaintiff's May 11, 2023, credit reports.

36. Defendants Equifax and Trans Union forwarded Plaintiff's dispute information to Defendant CAC for investigation as required by 15 U.S.C. § 1681(a)(2).

37. Following Plaintiff's May 2023 dispute letter, Defendants Equifax and Trans Union sent an ACDV to Defendant CAC regarding its tradeline with Plaintiff.

38. Defendant CAC failed to correct the account balance being reported in response to Plaintiff's dispute and incorrectly confirmed to Defendants Equifax and Trans Union that the account had a balance of $16,166 and failed to show that the account was included in bankruptcy and now closed, in violation of 15 U.S.C. §1681s-2(b).

39. Defendants Equifax and Trans Union all failed to conduct reasonable and independent investigations into Plaintiff's disputes, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate Defendant CAC account information in violation of 15 U.S.C. § 1681i.

40. Then on July 21, 2023, Plaintiff obtained another copy of his credit report from the credit reporting agencies, including Defendants Equifax and Trans Union, and saw that his tradeline with Defendant CAC was still incorrectly reporting a balance of $17,523 on all three credit reports, in violation of 11 U.S.C. § 524.

41. Defendant CAC's reporting adversely and/or negatively affected Plaintiff's credit profile.

42. By continuing to report the debt to the credit reporting agencies as open rather than "Discharged in Bankruptcy," Defendant CAC attempted to collect the debt following its discharge. *See Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

43. The purpose of Defendant CAC's reporting was debt collection and not merely informing others of Plaintiff's creditworthiness because the reporting was inaccurate and misleading in ways that hurt Plaintiff's creditworthiness.

44. Specifically, by reporting that the account is still open and not discharged in bankruptcy, Defendant CAC suggests that the debt has not been discharged and was either reaffirmed or declared non-dischargeable. *See In re Torres*, 367 B.R. 478, 487–88 (Bankr. S.D.N.Y. 2007), in violation of 11 U.S.C. § 524.

45. Then on or about August 21, 2023, Plaintiff sent another dispute letter to Defendants Equifax and Trans Union stating that the underlying Defendant CAC account / debt had been discharged in bankruptcy on March 7, 2023, and requesting that the inaccurate reporting of Defendant CAC's account be deleted or updated to the correct status pursuant to 15 U.S.C. §1681i.

46. In response to this dispute, Defendants Equifax and Trans Union were required to conduct reinvestigations into the specific Defendant CAC debt pursuant to 15 U.S.C. § 1681i.

47. Plaintiff's August 21, 2023, dispute letters to Defendants Equifax and Trans Union included a copy of Plaintiff's previous dispute letter, Plaintiff's Bankruptcy Discharge, and copies of the inaccurate tradeline from Plaintiff's credit reports.

48. Defendants Equifax and Tran Union forwarded Plaintiff's dispute information to Defendant CAC for investigation as required by 15 U.S.C. § 1681(a)(2).

49. Following Plaintiff's August 2023 dispute letter, Defendants Equifax and Trans Union sent an ACDV to Defendant CAC regarding its tradeline with Plaintiff.

50. Defendant CAC failed to correct the account balance being reported in response to Plaintiff's August 2023 dispute and incorrectly confirmed to Defendants Equifax and Trans Union that the account now had an increased balance of $17,535, was still open, and had late payments, in violation of 15 U.S.C. §1681s-2(b).

51. Defendants Equifax and Trans Union all failed to conduct reasonable and independent investigations into Plaintiff's disputes, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate Defendant CAC account information in violation of 15 U.S.C. § 1681i.

52. Defendant CAC's reporting adversely and/or negatively affected Plaintiff's credit profile.

53. The purpose of Defendant CAC's reporting was debt collection and not merely informing others of Plaintiff's creditworthiness because the reporting was inaccurate and misleading in ways that hurt Plaintiff's creditworthiness.

54. Defendant CAC's inaccurate credit reporting was willful and in full knowledge and awareness of Plaintiff's bankruptcy discharge and that the Discharge Provisions were in effect.

55. Defendant CAC has willfully violated the discharge injunction in bankruptcy.

56. Defendant CAC's actions have caused Plaintiff to suffer emotional distress and reduced credit. Because of Defendant CAC's willfully inaccurate credit reporting, Plaintiff has suffered reduced credit and emotional distress.

57. Defendants Equifax and Trans Union's reporting adversely and/or negatively affected Plaintiff's credit profiles.

58. Further, Defendants Equifax and Trans Union violated 15 U.S.C. §1681e(b) on numerous occasions when they published to third parties, Plaintiff's credit report with inaccuracies.

59. As a result of the Defendants Equifax and Trans Union's actions, Plaintiff has suffered reduced credit, emotional distress, anxiety, despair, loss of sleep, headaches, and fear of never being able to get his credit reports accurate and correctly reported.

## DAMAGES

60. Defendant CAC caused Plaintiff emotional distress and reduced credit.

61. Plaintiff is entitled to attorney's fees and costs from Defendant CAC under 15 U.S.C. § 1681o(a)(2) and § 1681n.

## RESPONDEAT SUPERIOR LIABILITY

62. The acts and omissions of Defendants, and/or the agents of Defendants who communicated with Plaintiff – further described herein – were committed within the time and space limits of their agency relationship with their principal, Defendants.

63. The acts and omissions by Defendants and/or these other agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendants in furnishing consumer credit information and collecting consumer debts.

64. By committing these acts and omissions against Plaintiff, these other agents were motivated to benefit their principal, Defendants.

65. Defendants is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its agents and employees, including but not limited to violations of the FCRA, in their attempts to collect this debt from Plaintiff.

## STANDING

66. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendants;

    c. and is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). To meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must allege facts demonstrating all three prongs above.

*The "Injury in Fact" Prong*

67. Plaintiff's injury in fact must be both "concrete" and "particularized" to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

68. For an injury to be "concrete" it must be a *de facto* injury, meaning that it exists. In the present case, Defendants engaged in violative conduct under the FCRA. Such conduct and attempts to collect debt are an invasion of Plaintiff's privacy and caused Plaintiff to suffer emotional distress and a reduced credit score.

69. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In the instant case, Plaintiff personally suffered emotional distress and reduced credit.

*The "Traceable to the Conduct of Defendant" Prong*

70. The second prong required to establish standing at the pleadings phase is that the Plaintiff must allege facts to show that the Plaintiff's injury is traceable to the conduct of Defendants.

71. In the instant case, this prong is met simply by the fact that the violative conduct contemplated in this Complaint was initiated by Defendants directly, or by Defendant's agent at the direction of Defendants.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

72. The third prong to establish standing at the pleadings phase requires the Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

73. In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages. The damages were set by Congress and specifically redress the damages suffered by Plaintiff. Furthermore, the award of monetary damages redresses the injuries of the past and prevents further injury by Defendants in the future.

74. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendants on the stated claims.

## TRIAL BY JURY

75. Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. Amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq*. – AGAINST DEFENDANT CAC**

76. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

77. Defendant CAC violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, including information provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the

account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

78. As a result of Defendant CAC's violations of the FCRA, Plaintiff has suffered actual damages not limited to detriment to his credit rating and emotional distress in an amount to be determined at trial.

79. Defendant CAC's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court under 15 U.S.C. § 1681n.

80. Alternatively, Defendant CAC's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

81. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant CAC in an amount to be determined by the Court under Bankruptcy Violation 11 U.S.C. § 524 and 15 U.S.C. §§ 1681n and 1681o.

## COUNT II.

### BANKRUPTCY INJUNCTION VIOLATION – 11 U.S.C. § 524 – AGAINST DEFENDANT CAC

82. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

83. Defendant CAC's actions by presenting to Plaintiff an attempt to collect on a debt that had been included in bankruptcy, violated the discharge injunction.

84. Defendant CAC's actions in attempting to collect the alleged debt included and discharged in Plaintiff's bankruptcy were willful.

85. In its actions set forth above, Defendant CAC has violated the Discharge Injunction provisions of the Bankruptcy Code, including but not limited to 11 U.S.C. §§ 362, 524(a)(2) and 524(a)(3).

86. Defendant CAC's violations of the discharge injunction entitle Plaintiff to actual damages, attorney's fees, and costs, as well as punitive and/or exemplary damages under Sections 362(k) and any other applicable sections of the Bankruptcy Code. *See* T*aggart v. Lorenzen*, 2019 WL 2331303 (June 3, 2019).

87. The knowing, conscious, deliberate, and willful violations of the discharge injunction by Defendant CAC are in contempt of the bankruptcy court and are further punishable under Sections 105(a) of the Bankruptcy Code.

## COUNT III.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 et seq. – AGAINST DEFENDANTS EQUIFAX AND TRANS UNION

72. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

73. Defendants Equifax and Trans Union failed to conduct a reasonable reinvestigation into Plaintiff's disputes, in violation of 15 U.S.C. § 1681i.

74. Defendants Equifax and Trans Union violated 15 U.S.C. §1681e(b) when it published to third parties, Plaintiff's credit report with numerous inaccuracies.

75. Defendants' Equifax and Trans Union conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be allowed by the Court under 15 U.S.C. § 1681n.

76. Alternatively, the Defendants' Equifax and Trans Union violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

77. As a result of Defendants' Equifax and Trans Union violations of the FCRA, Plaintiff has suffered out-of-pocket expenses, detriment to his credit rating, mental anguish, and emotional distress in an amount to be determined at trial, under 15 U.S.C. §1681o.

78. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, and costs and attorney's fees from Defendants Equifax and Trans Union in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

- Ordering Defendant CAC to cease its collection efforts against Plaintiff;
- Awarding to Plaintiff compensatory and punitive damages and attorney's fees against Defendant CAC under 11 U.S.C. § 105(a);
- Awarding Plaintiff actual and statutory damages against Defendants for violations of the FCRA under 15 U.S.C. §§ 1681n and 1681o;
- Awarding Plaintiff reasonable attorney's fees and costs against Defendants pursuant to 15 U.S.C. § 1681n and 1681o;
- Awarding Plaintiff punitive damages against Defendants for its willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n; and
- Ordering such other and further relief as may be just and proper.

Dated: December 1, 2023              Respectfully submitted,


                                              By: *s/ Mark L. Vavreck*
                                              Mark L. Vavreck, Esq.
MN Attorney I.D. #: 0318619
**VAVRECK LAW, LLC**
International Plaza
7900 International Drive, Suite 300
Bloomington, MN 55425
Telephone: (612) 373-7000
Mark@Vavrecklaw.com

Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
tommy@consumerjusticecenter.com

***ATTORNEYS FOR PLAINTIFF***

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, David Moody, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorney and I believe that all of the facts contained in it are true to the best of my knowledge, information, and belief, formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not intended for any improper purpose, such as to harass the Defendant, cause unnecessary delay to the Defendant, or create a needless increase in the cost of litigation to the Defendant named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated: Dec 03, 2023

David Moody